IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMRO ELANSARI,<br><br>                    Plaintiff,<br><br>    v.<br><br>META, INC. d/b/a FACEBOOK,<br><br>                    Defendant. | CIVIL ACTION<br>NO. 21-5325 |

## ORDER

**AND NOW**, this 21st day of December 2021, upon consideration of pro se Plaintiff's Complaint (Doc. No. 1), Ex Parte Petition for Preliminary Injunction (Doc. No. 2), Ex Parte Motion for Oral Argument (Doc. No. 5), and Ex Parte Emergency Motion for Preliminary Injunctive Relief (Doc. No. 6), it is **ORDERED** as follows:

1. Plaintiff's Ex Parte Petition for Preliminary Injunction (Doc. No. 2), Ex Parte Motion for Oral Argument (Doc. No. 5), and Ex Parte Emergency Motion for Preliminary Injunctive Relief (Doc. No. 6) are **DENIED**.[1]

---

[1] On November 30, 2021, Plaintiff filed a Complaint ("Complaint"), in which he alleges that Defendant Meta Platforms, Inc., doing business as Meta and formerly known as Facebook, Inc., "discriminated against him [the] week of November 22, 2021 as a Muslim by banning Palestinian Muslim News Organizations reporting on war crimes and international law violations while allowing Pro-Israel and Jewish Organizations [to] operate on the Facebook freely posting posts inciting violence and war crimes and international law violations against Palestinian and Arab people." (Doc. No. 1 at 1.)

Based on this alleged conduct, Plaintiff alleges against Defendant claims of: (1) unlawful discrimination on the basis of religion in violation of Title II of the Civil Rights Act of 1964 ("CRA"), 42 U.S.C § 2000a, et seq.; (2) racial discrimination in contractual relationships in violation of 42 U.S.C. § 1981; (3) negligent misrepresentation under Pennsylvania state law; and (4) fraudulent representation under Pennsylvania state law. (See Doc. No. 1 at 4–10.) The Complaint does not seek money damages, but instead seeks injunctive relief "[ordering] Defendant to desist the unequal[,] inequitable misconduct described" in the Complaint. (Doc. No. 1 at 8.)

1

On the same day that Plaintiff filed his Complaint, he also filed an Ex Parte Petition for Preliminary Injunctive Relief ("Petition"). (Doc. No. 2.) The Petition is based on the same facts alleged in the Complaint and requests the Court to order Defendant to restore the various Palestinian, Muslim, and Arab news sources on Facebook that Plaintiff alleges were unlawfully banned.

On December 15, 2021, Plaintiff filed an Emergency Ex Parte Petition for Preliminary Injunctive Relief ("Emergency Petition") (Doc. No. 6), seeking the same relief as his prior Petition, and an Ex Parte Motion for Oral Argument ("Motion") (Doc. No. 5), relating to his request for injunctive relief. Since both the Petition and Emergency Petition are identical in the relief sought and underlying factual basis (see Docs. No. 2, 6), the Court will treat both as being a single request for preliminary injunctive relief.

Plaintiff's request for preliminary injunctive relief is construed as an application for a temporary restraining order ("TRO") because the record does not indicate Defendant has been served or put on notice. See Fed. R. Civ. P. 65(b). While a summons was issued to Defendant in connection with Plaintiff's Complaint, there is nothing in the record indicating that Defendant has been put on notice that Plaintiff is seeking a TRO. In fact, the Petitions in which he requests a TRO were all filed ex parte. (See Docs. No. 2, 5, 6.)

"The purpose of a [TRO] is to preserve that status quo and prevent irreparable harm until the court can schedule an adversarial hearing for a preliminary injunction." 2 Steven S. Gensler & Lumen N. Mulligan, Rule 65. Injunctions and Restraining Orders, FEDERAL RULES OF CIVIL PROCEDURE, RULES AND COMMENTARY (2021). A court "may issue a [TRO] without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). While the rule states that it is "the movant's attorney" who must certify the efforts made to give notice and reasons why the court should not require it, courts appear to apply this rule to pro se litigants as well. Id.; See also Cutler v. Green, CV 17-984, 2017 WL 1092327, at *1 n.3 (E.D. Pa. Mar. 22, 2017) (making no distinction regarding this requirement where a TRO was requested by a pro se plaintiff).

Here, Plaintiff did not attach to his Petition, Motion, or Emergency Petition a Rule 64(b)(1)(B) certification showing that he attempted to give notice to Defendant and explaining the reasons why notice should not be required. On the contrary, and as noted supra, he filed these documents ex parte, which suggests quite the opposite: that it was his intent to avoid putting Defendant on notice of his request for a TRO.

Failure to satisfy this requirement is normally grounds for denying a TRO request. See 2 Gensler & Mulligan, supra. However, because Plaintiff is proceeding pro se, the Court will overlook this defect and address his request for a TRO on the merits in the interest of justice.

---

Courts employ a four-factor test to determine whether to issue a TRO. See M. Rae, Inc. v. Wolf, 509 F. Supp. 3d 235, 244 (M.D. Pa. 2020). The four-factor test requires the moving party first to establish "the two 'most critical' factors: likelihood of success on the merits and irreparable harm." Id. (citing Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017)). Establishing likelihood of success on the merits requires the movant to show it can "win on the merits." Id. (quoting Reilly, 858, F.3d at 179). This showing must be "significantly better than negligible but not necessarily more likely than not." Id. (quoting Reilly, 858, F.3d at 179). To establish irreparable harm, the movant has a "slightly enhanced burden" of showing "that it is 'more likely than not' to suffer irreparable harm absent the requested relief." Id. (quoting Reilly, 858 F.3d at 179). If the movant can establish the first two factors, then the court looks to factors three and four—"the potential for harm to others if relief is granted, and whether the public interest favors injunctive relief." Id. (citing Reilly, 858 F.3d at 176, 179). "The court must then balance all four factors to determine, in its discretion, whether the circumstances favor injunctive relief." Id. (citing Reilly, 858 F.3d at 179).

Regarding Plaintiff's first cause of action, Plaintiff has not demonstrated a likelihood of success on the merits. First, Plaintiff urges the Court to find that Facebook qualifies as a "public accommodation" for purposes of Title II of the CRA. (See Doc. No. 1 at 4–7.) "[A] number of courts have concluded that companies which provide online services exclusively do not fall under the ambit of Title II's prohibition against discrimination in places of 'public accommodation' as that definition is limited to businesses which operate out of physical facilities." Wilson v. Twitter, 3:20-CV-00054, 2020 WL 3410349, at *7 (S.D.W. Va. May 1, 2020), report and recommendation adopted, CV 3:20-0054, 2020 WL 3256820 (S.D.W. Va. June 16, 2020).

The Court is mindful, though, that "there is a growing recognition among the circuits that, in the analogous context of [Americans with Disabilities Act] discrimination claims, the remedial purpose of the federal civil rights statutes would be thwarted if courts were to continue adhering to a rigid distinction between virtual and physical commerce given the rapid modern expansion of virtual commerce and association." Id. at *9; see also S. Dakota v. Wayfair, Inc., 138 S.Ct. 2080, 2092 (2018) (describing the physical presence rule, with regard to whether internet sellers with no physical presence in South Dakota had to comply with a statute requiring them to collect and remit sales tax, as an "arbitrary and formalistic distinction" and stating that the Court "should focus on rules that are appropriate to the twenty-first century, not the nineteenth") (internal quotations omitted). On that issue, however, "[this Circuit] is among those that have taken the position the term is limited to physical accommodations." Peoples v. Discover Fin. Servs., Inc., 387 F. Appx. 179, 183 (3d Cir. 2010); see also Mahoney v. Herr Foods Inc., 19-CV-5759, 2020 WL 1979153, at *3 (E.D. Pa. Apr. 24, 2020) (reinforcing Peoples by citing its "unmistakable language").

Notwithstanding this split among the circuits, it is clear that Plaintiff has not sufficiently demonstrated a likelihood of success on this claim. The stance Plaintiff urges the Court to take has no precedent in this Circuit and the analogous cases from this Circuit discussed above weigh against adopting Plaintiff's position. See Peoples, 387 F. App'x at 183; Mahoney, 2020 WL 1979153 at *3.

3

BY THE COURT:


/s/ Joel H. Slomsky
JOEL H. SLOMSKY, J.

---

Regarding Plaintiff's cause of action under § 1981, he also has not demonstrated a likelihood of success on the merits, as he has not demonstrated the existence of any contract for which he can base his racial discrimination claim. See (Doc. No. 1 at 8–9); 42 U.S.C. § 1981. Similarly, he has not demonstrated a likelihood of success on the merits on his third and fourth claims, for negligent and fraudulent representation, respectively, as he has not sufficiently identified any specific representation Defendant made to him. Instead, he asserts in conclusory language that "Defendant represents in [its] terms of service and various public statements made that [it is] a platform of equality and fairness." (Id. at 9; see also id. at 10.)

Plaintiff also has not established the presence of the second TRO factor—irreparable harm. "An irreparable harm is a harm which cannot be redressed by a legal or an equitable remedy following a trial." Pierre & Carlo, Inc. v. Premier Salons, Inc., 713 F. Supp. 2d 471, 481 (E.D. Pa. 2010) (internal citation omitted). Plaintiff alleges that, unless a TRO is ordered, he will suffer irreparable harm because he "will not be able to retrieve . . . uninterrupted access to . . . Muslim [and] Palestinian [n]ews [s]ources." (Doc. No. 2 at 3.) This is insufficient to show that "it is 'more likely than not'" that Plaintiff will "suffer irreparable absent the requested relief." M. Rae, Inc., 509 F. Supp. 3d at 244 (quoting Reilly, 858 F.3d at 179). Even assuming everything alleged in Plaintiff's Complaint is true, at the very least, he could obtain his news from other sources. Simply put, the harm Plaintiff alleges he will suffer absent the requested relief is by no means "irreparable."

Since Plaintiff is unable to establish the first two factors necessary for a TRO—likelihood of success on the merits and irreparable harm—the Court need not consider the remaining two factors. It is evident that Plaintiff is not entitled to the relief that he seeks in his Petition and Emergency Petition. Accordingly, Plaintiff's Petition (Doc. No. 2), Motion (Doc. No. 5), and Emergency Petition (Doc. No. 6), will be denied.