**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|   |   |   |
|---|---|---|
| AMRO ELANSARI. | : | |
| Plaintiff, | : | CIVIL ACTION |
|  | : | CASE NO. 2:21-cv-05325-JHS |
| vs. | : | |
| META, INC. d/b/a FACEBOOK, | : | |
| Defendant. | : | |

**DEFENDANT META PLATFORMS, INC.'S**
**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Defendant Meta Platforms Inc. ("Meta"),[1] through its undersigned counsel, respectfully moves to dismiss *pro se* Plaintiff Amro Elansari's ("Plaintiff" or "Elansari") November 30, 2021, Complaint (Doc. No. 1) ("Complaint"), with prejudice, because Plaintiff lacks standing for the claims alleged, the Complaint fails to state a claim upon which relief can be granted, and 47 U.S.C. § 230 bars all of Plaintiff's claims.

## I.   INTRODUCTION

*Pro se* Plaintiff is no stranger to this Court, having filed numerous lawsuits against various companies. Plaintiff's claims in those lawsuits cover the complete gambit of recognized tort, contract, and civil rights claims. Several of Plaintiff's prior lawsuits, like this one, also include causes of actions not recognized by any court.

Here, Plaintiff alleges that Meta "shut down" one or more Facebook pages that he frequently visited to obtain news related to the Muslim religion and Palestine. Plaintiff alleges

---

[1] Plaintiff improperly identified Defendant as "Meta, Inc. d/b/a Facebook."

that Meta's conduct violated his civil rights based on his race and religion because Meta has not "shut down" pages that provide news related to the Jewish religion and Israel.

This Court should dismiss Plaintiff's claims with prejudice for three reasons: (1) this Court lacks jurisdiction pursuant to Rule 12(b)(1) for Plaintiff's claims under 42 U.S.C. § 2000a ("Title II") and 42 U.S.C. § 1981 ("§ 1981") because Plaintiff lacks standing; (2) Plaintiff fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6); and (3) Plaintiff's claims are barred pursuant to 47 U.S.C. § 230.

## II.  BACKGROUND

Meta operates an eponymous social-networking platform called Facebook, which enables users to share, promote, and view content on their Facebook pages. The Complaint alleges that Meta violated the Plaintiff's civil rights under Title II and § 1981 by engaging in religious or racial discrimination by allegedly shutting down Facebook pages for Palestinian, Muslim, and Arab news sources during the week of November 22, 2021. Doc. No. 1, at ¶¶ 4, 9-10. Plaintiff claims to use these Facebook pages as sources for news but did not claim to own or operate the pages himself. Doc. No. 1, at ¶ 9. Plaintiff seeks injunctive relief ordering Meta to restore "the banned Palestinian news sources" and to prohibit Meta from discriminating on the basis of religion or race. Doc. No. 1, at ¶ 4.[2]

Plaintiff provides no specific details regarding the Facebook pages at issue besides the name "Al-Qastal" and that the pages purportedly provided information related to Palestine and the Muslim religion. Plaintiff also alleges that Meta either intentionally or negligently misrepresented its equality and non-discrimination practices in its "terms of service." Doc. No. 1, at ¶¶ 52-60.

---

[2] Plaintiff appears to also seek monetary damages with respect to his Title II claim. *See* Doc. No. 1, at ¶ 35.

Plaintiff did not attach a copy of the alleged "terms of service" to the Complaint. Rather, Plaintiff generally alleges that those terms state "that customers are treated equally and fairly based on race / religion / other protected classes." Doc. No. 1, at ¶ 49. Facebook's Terms of Service do not contain the generalized terms advanced by Plaintiff or any equivalent language. *See* Exhibit A, Declaration of Stephen Hall Ex. A.[3]

Furthermore, Plaintiff does not identify any specific representation that Meta made to him, nor does he allege that he relied on any such representation to his detriment. Also, Plaintiff does not allege that he entered into any transactions with Meta as a result of any allegedly misleading representation. Plaintiff does not allege any pecuniary or monetary loss that he suffered as a result of such conduct. Yet, Plaintiff seeks compensatory and punitive damages in relation to his misrepresentation claims. Doc. No. 1, at ¶¶ 55, 60.

## III.    LEGAL STANDARD

A "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," however, the Court must "review the pleading to ensure that it has sufficient factual matter; accepted as true; to state a claim to relief that is plausible on its face." *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015). Where amending the complaint is futile, the complaint should be dismissed. *See Pellegrino v. Epic Games, Inc.*, 451 F. Supp. 3d 373, 391 (E.D. Pa. 2020).

A plaintiff lacks subject matter jurisdiction to assert a claim where he or she lacks standing. *See Borough of Avalon v. United States Army Corps of Engineers*, No. CV 16-8057 (JBS/KMW), 2017 WL 3917138, at *3 (D.N.J. Sept. 7, 2017) (motions to dismiss for lack of standing "are

---

[3] Plaintiff's allegations regarding "terms of service" incorporates by reference the applicable Facebook Terms of Service in effect during the relevant time period. Defendant hereby relies on the Terms of Service submitted with the Declaration of Stephen Hall, submitted herewith.

properly brought under Rule 12(b)(1) because these doctrines are jurisdictional matters."). A motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) challenges a court's very power to hear the case. *Walthour v. Child & Youth Servs.*, 728 F. Supp. 2d 628, 635 (E.D. Pa. 2010) (citing *Mortensen v. First Fed. Savings and Loan Ass'n.*, 549 F.2d 884, 891 (3d Cir.1977)). The plaintiff bears the burden of showing that his or her claims are properly before the Court. *Id*.

When deciding a Rule 12(b)(1) motion, a court must first determine whether "the attack on its jurisdiction is a facial attack or a factual attack." *Van Tassel v. Lawrence County Domestic Relations Section*, 659 F.Supp.2d 672, 687 (W.D.Pa.2009). A factual attack on the court's jurisdiction "is an argument that there is no subject matter jurisdiction because the facts of the case do not support the asserted jurisdiction." *Paradise Concepts, Inc. v. Wolf*, 482 F. Supp. 3d 365, 369–70 (E.D. Pa. 2020). In reviewing a factual attack, a "court may weigh and consider evidence outside the pleadings." *Id.*

A. <u>Standard Under Rule 12(b)(6): Failure to State a Claim</u>

To withstand a motion to dismiss under Rule 12(b)(6), "factual allegations must be enough to raise a right to relief above the speculative level." *Am. Stores Properties, Inc. v. Spotts, Stevens & McCoy, Inc.*, 678 F. Supp. 2d 328, 330 (E.D. Pa. 2009). A complaint has facial plausibility when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Paradise Concepts, Inc. v. Wolf*, 482 F. Supp. 3d 365, 369–70 (E.D. Pa. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint must do more than allege a plaintiff's entitlement to relief; it must "show" an entitlement exists with its facts. *Phillips v. County of Allegheny*, 515 F.3d 224, 234–35 (3d Cir. 2008) (comparing "showing" to a bare averment a plaintiff wants and is entitled to relief). "[W]here the

4

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Jones v. ABN Amro Mortg. Group, Inc.*, 606 F.3d 119, 123 (3d Cir.2010).

## IV.     ARGUMENT

### A.     Plaintiff Lacks Standing to Bring His Title II and § 1981 Claims

Here, Plaintiff's Title II and § 1981 claims fail because he failed to allege an injury in fact sufficient to establish the standing requirement. To invoke this court's jurisdiction, a plaintiff must have standing to sue. *See Hassan v. City of New York*, 804 F.3d 277, 289 (3d Cir. 2015), *as amended* (Feb. 2, 2016). A party must continue to have standing, his "requisite personal interest," for his claims throughout the duration of litigation. *Arizonans for Official English*, 520 U.S. 43, 68 n.22 (1997) (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)) (internal quotation marks omitted).

Standing exists when a plaintiff alleges that he or she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, (2016), *as revised* (May 24, 2016) (citations omitted). Accordingly, to establish standing at the motion to dismiss stage, a plaintiff must assert "general factual allegations of injury resulting from the defendant's conduct." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The party invoking federal jurisdiction bears the burden of proof, *id.*, and "must demonstrate standing for each claim that [he/she/they] press[es] and for each form of relief that [he/she/they] seek[s]," *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).

5

"To establish an injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc.*, 578 U.S at 399 (quoting *Lujan*, 504 U.S. at 560). A person lacks standing where he or she was not personally injured and simply seeks relief for another person or entity that suffered an injury. *See Frissell v. Rizzo*, 597 F.2d 840 (3d Cir. 1979) (abrogated on other grounds) (area resident lacked standing to sue mayor who stopped buying newspaper ads, finding the resident failed to allege an injury, and only alleged one suffered by the newspaper).

Based on the injury in fact requirement, courts have established specific standing requirements for both Title II and § 1981. For a plaintiff to establish standing under Title II, a plaintiff "must allege that he himself was denied access or services of the public accommodation." *See Bartley v. Virgin Grand Villas*, 197 F. Supp. 2d 291, 294 (D.V.I. 2002); *see also Levy v. Trent Motel Assocs., LP*, No. CIV.A. 11-776, 2011 WL 3803647, at *5 (E.D. Pa. Aug. 26, 2011) (finding hotel employee who was ordered to stop renting the ballroom to black customers lacked standing for a Title II claim on behalf of the would-be patrons). Similarly, for a § 1981 claim, a plaintiff "must identify injuries flowing from a racially motivated breach of [their] own contractual relationship, not of someone else's." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 480 (2006).

Plaintiff does not allege that he suffered any injury in fact or that he was denied access to a public accommodation or services. Rather, Plaintiff alleges that Meta "shut down" the Facebook pages owned or operated by Palestinian, Muslim, or Arab news sources, identifying "Al-Qastal" specifically. Plaintiff has not and cannot allege any property right, statutory right, contractual right, or any other legally protected right to view the purportedly shut down Facebook pages.

Notably, even if the Court accepts all of Plaintiff's allegation as true, the Complaint fails to establish that that Plaintiff was deprived of the full and equal enjoyment of the Facebook platform. Plaintiff's alleged inability to view a particular Facebook page that he neither owned or operated for any amount of time is not particularized or concrete to him. Even the most generous reading of Plaintiff's Complaint fails to establish that Meta prevented Plaintiff from using or accessing the Facebook platform. In fact, the Complaint establishes that Plaintiff has continued to access and use the Facebook platform to view content shared by others. Accordingly, Plaintiff has no standing to assert a claim under Title II or § 1981, and this Court should dismiss Plaintiff's claims with prejudice.

      B.      <u>Plaintiff Fails to State a Claim upon which Relief can be Granted</u>

While Plaintiff lacks standing with respect to his Title II and § 1981 claims, Plaintiff's entire Complaint should be dismissed because Plaintiff fails to state a claim upon which this Court can grant relief. All of Plaintiff's claims relate to Meta's alleged shut down of Palestinian, Muslim, or Arab news source pages, and in particular the Al Qastal News page. The Complaint fails to articulate plausible claims. Moreover, even if Plaintiff could state plausible claims against Meta for the removal of content, Meta is immune from civil liability, regardless of the name of the action, which relates the exercise of traditional editorial functions, like removal content.

      1.      ***Plaintiff's Title II Claims Fail.***

This Court should dismiss Plaintiff's Title II claim with prejudice because the Complaint does not and cannot state a plausible Title II claim. Plaintiff's Title II claim fails because Meta did not deprive Plaintiff of full and equal enjoyment of a recognized public accommodation.

To state a Title II claim, a plaintiff must allege that he himself was denied access or services of a public accommodation. *See McCrea v. Saks, Inc.*, No. 00-cv-1936, 2000 WL 1912726, at *2

(E.D. Pa. Dec. 22, 2000). Title II identifies a detailed list of establishments which serve the public that are public accommodations within the meaning of Title II. *See* 42 U.S.C. § 2000a(b). Businesses not listed in Title II should not be read into that statute. *See McCrea*, 2000 WL 1912726, at *2 (holding that retail stores were not specifically listed in Title II and therefore are not within the meaning of "public accommodations"). Furthermore, under established Third Circuit law, a "public accommodation" is limited to physical structures. *See Peoples v. Discover Fin. Servs., Inc.*, 387 F. Appx. 179, 183 (3d Cir. 2010) (holding that the term public accommodation is limited physical accommodations); *see also Mahoney v. Herr Foods Inc.*, 19-CV-5759, 2020 WL 1979153, at *3 (E.D. Pa. Apr. 24, 2020).

Facebook is not a physical structure. In its simplest form, Facebook is a website consisting of a set of related webpages created by users who have set up a profile account to share and discover content. When Plaintiff "accesses" Facebook, he does not enter a physical location. Rather, Plaintiff interacts with hyperlinked pages of user-content. Plaintiff's use of Facebook is unconnected to entry into a public place or facility. *See Ebid v. Facebook, Inc.*, 2019 WL 2059662, at *6 (N.D. Cal. May 9, 2019) (finding services provided by Facebook's online platform were "unconnected to entry into a public place or facility and therefore the plain language of Title II [made] the statute inapplicable"); *see also Noah v. AOL Time Warner, Inc.,* 261 F. Supp. 2d 532, 537 (E.D. Va. 2003), *aff'd*, No. 03-1770, 2004 WL 602711 (4th Cir. Mar. 24, 2004) (chat room not a public accommodation); *Wilson v. Twitter*, No. 3:20-CV-00054, 2020 WL 3410349, at *7 (S.D.W.Va. May 1, 2020), *report and recommendation adopted*, No. CV 3:20-0054, 2020 WL 3256820 (S.D.W. Va. June 16, 2020) ("a number of courts have concluded that companies which provide online services exclusively do not fall under the ambit of Title II's prohibition against discrimination in places of 'public accommodation' as that definition is limited to businesses which

8

operate out of physical facilities.").

Because Facebook is not a public accommodation under Title II, Plaintiff cannot state a plausible Title II claim against Meta for allegedly removing user content from Facebook. Accordingly, this Court should dismiss Plaintiff's claim with prejudice.

### 2. *Complaint Fails to State a Claim Under § 1981.*

Plaintiff's Complaint fails to plausibly state a § 1981 claim. To state a claim under § 1981, a plaintiff must allege: (1) that he is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning the right to make and enforce contracts. *See Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3rd Cir. 2001). Any claim brought under § 1981 must initially identify plaintiff's own impaired contractual relationship, not someone else's. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476-80 (2006).

Here, Plaintiff has not alleged that Meta deprived him of the right to contract for or use of Facebook. Plaintiff has not alleged that Meta engaged in a discriminatory refusal to deal with Plaintiff based on his race. *See Brown*, 250 F.3d at 797. Further, Plaintiff does not allege that Meta provided Plaintiff different access to Facebook based on his race. *Id.* Accordingly, Plaintiff has not alleged an actionable claim under § 1981, and this Court should dismiss Plaintiff's claim with prejudice.

### 3. *Relief in Equity is Not a Cause of Action.*

Plaintiff's Count II, "Relief in Equity," should be dismissed because it is not an independent cause of action, only a form of relief. *See Sikhs for Justice v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1090 (N.D. Cal. 2015). Whether Plaintiff is entitled to injunctive relief depends on the success of the other causes of action he asserted, and therefore, this is addressed separately for each of his other claims. Accordingly, this Court should dismiss his independent cause of

action for equity.

### 4. *The Complaint Fails to Allege the Necessary Elements of Misrepresentation.*

Counts IV and V asserts claims of negligent and fraudulent misrepresentation, which should be dismissed because Plaintiff fails to allege any facts sufficient to establish either claim. Instead, Plaintiff recited the elements of these causes of action and asserted conclusory statements without supporting allegations or citation. *See Iqbal,* 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."). The elements of each claim are virtually identical requiring the defendant to misrepresent a material fact with the intent to induce another to act based on the misrepresentation resulting in injury from the party justifiably relying on the misrepresentation. *See Gibbs v. Ernst*, 538 Pa. 193, 210 (1994). The only difference between the causes of action is that under negligent misrepresentation, the speaker need not know his words are untrue, but failed to conduct a reasonable investigation of their truth. *See id.* (citing the difference between negligent and intentional misrepresentation).

Here, the Complaint lacks any allegations to support a claim that Meta made material misrepresentations which Plaintiff justifiably relied on to his detriment. In fact, Plaintiff fails to identify any false representations made by Meta. Plaintiff refers to unknown "terms of service" and public statements allegedly made by Meta. Plaintiff's vague and conclusory allegations are insufficient to state a claim of negligent or fraudulent misrepresentation. *See Floyd v. Brown & Williamson Tobacco Corp*. 159 F. Supp. 2d 823, 832-34 (E.D. Pa. 2001) (dismissing negligent and fraudulent misrepresentation claims where plaintiff failed to identify any specific misrepresentations). Accordingly, Plaintiff fails to state a plausible claim for negligent or fraudulent misrepresentation and thus, this Court should dismiss Plaintiff's claims with prejudice.

C.  The Communication Decency Act Bars All of Plaintiff's Claims.

In addition to the fatal deficiencies in Plaintiff's Complaint discussed above, this Court should dismiss Plaintiff's Complaint in its entirety because the Communications Decency Act, 47 U.S.C § 230 ("§ 230") bars Plaintiff's claims and necessitates dismissal with prejudice.

Section 230 protects computer service providers from claims seeking to hold the service provider liable for exercising a publisher's traditional editorial functions, such as deciding whether to publish, withdraw, postpone, or alter content. *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003). Section 230 provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). Section 230 immunity attaches when: 1) the defendant is a provider of an interactive computer service; 2) the information at issue was provided by another information content provider; and 3) the plaintiff's claims seek to treat the defendant as a publisher or speaker of third-party content. *See Putt v. TripAdvisor Inc.*, No. 20-3836, 2021 WL 242470, at * 4 (E.D. Pa. Jan. 25, 2021).

1.  *Facebook Is a "Provider" of an "Interactive Computer Service."*

Interactive computer service is defined as any service, system, or access software provider that provides or enables computer access by multiple users to a computer server. 47 U.S.C. § 230(f)(2). There can be no dispute that Facebook is an interactive computer service. In fact, Plaintiff concedes this point by alleging that Facebook is a virtual social network that allows multiple users to access computer servers. *See* Doc. No. 1, at ¶ 24. Moreover, this Court has found Facebook to be an interactive computer service under § 230. *See Hepp v. Facebook, Inc.*, 465 F. Supp. 3d 491, 498 (E.D. Pa. 2020) (finding that Facebook fits squarely within the definition of an interactive computer service). Indeed, other courts in this Circuit have also found that Facebook

and similar platforms fit the definition of interactive computer service. *See Shulman v. Facebook.com*, No. 17-764, 2018 WL 3344236, *7 (D.N.J. July 9, 2018) (finding Facebook to be an interactive computer service); *see also Marfione v. KAI U.S.A., Ltd.*, No. 17-10, 2018 WL 1519042, at *6 (W.D. Pa. Mar. 28, 2018) (finding Instagram to be an interactive computer service). Accordingly, Facebook is an interactive computer service provider under § 230.

### 2. *The Content at Issue was Provided by a Third Party.*

Plaintiff's allegations establish that the content at issue was provided by third parties. Plaintiff's claims relate to content provided by Palestinian, Muslim, and Arab news sources, not Facebook. These news sources are responsible for the creation or development of the content they provide on Facebook. *See* 47 U.S.C. § 230(f)(3). There are no allegations that Meta had any role in creating the news content at issue. Accordingly, the content at issue was provided by another information content provider.

### 3. *Plaintiff Seeks to Treat Meta as a Publisher or Speaker.*

Plaintiff seeks to treat Meta as a publisher where he alleges that Meta removed Palestinian, Muslim, and Arab news sources from Facebook. As an interactive computer service provider, Meta is immune for claims seeking to treat it as the publisher of content issued by another party under § 230. *See Green*, 318 F.3d at 471 (holding that § 230 immunizes traditional publisher conduct, such as deciding whether to publish, withdraw, or alter content). This also applies to political speech. *See Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1120 (N.D. Cal. 2020) (noting that § 230 does not contain an exception for the First Amendment or political speech, finding Facebook was immune from liability for blocking accounts accused of being involved in Russian interference in an election); *see also Sikhs for Justice v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1088 (N.D. Cal. 2015).

Ultimately, Plaintiff's claims fit squarely within the types of claims for which § 230 provides immunity. Accordingly, § 230 bars all of Plaintiff's claims, and this Court should dismiss Plaintiff's Complaint in its entirety, with prejudice.

## V.     **PLAINTIFF'S IMPROPER USE OF EMERGENCY FILINGS**

While Plaintiff has asserted numerous frivolous cases in the past few years,[4] his litigation conduct in this case appears to have reached a new level. Plaintiff filed a barrage of five (5) motions seeking immediate or "emergency" relief or consideration without any attempt to notify Meta, in what appears to be an attempt to improperly secure an advantageous decision from yet another frivolous case. *See* Doc. No. 2 (*Ex Parte* Petition for Preliminary Injunction); Doc. No. 5 (*Ex Parte* Motion for Oral Argument); Doc. No. 6 (*Ex Parte* Emergency Motion for Preliminary Injunctive Relief); Doc. No. 9 (Emergency Petition for Reconsideration); Doc. No. 15 (Motion to Expedite Emergency Petition). This suit and Plaintiff's conduct herein may suggest he has not been deterred from seeking to advance meritless and frivolous lawsuits and tactics.

As this Court is aware, Plaintiff is currently enjoined from filing any civil, non-*habeas* cases on an *in forma pauperis* basis in the U.S. District Court for the Eastern District of Pennsylvania unless he files through counsel, becomes incarcerated, or seeks review of a social security benefit decision. *Elansari v. Commonwealth of Pennsylvania*, Civil Action No. 21-CV-0141, Doc. No. 11, at 3 (E.D. Pa. Jan. 29, 2021) (enjoining Plaintiff from filing *in forma pauperis*

---

[4] Defendant Meta is aware of several civil rights cases filed by Elansari that were ultimately dismissed, including, *Elansari v. Barr*, E.D. Pa. Civ. A. No.20-4000 ("legally frivolous" and "legally baseless"); *Elansari v. Commonwealth of Pa.*, E.D. Pa. Civ. A. No. 20-3895; *Elansari v. Commonwealth of Pa.*, E.D. Pa. Civ. A. No. 20-4109 (citing fourteen cases filed by Elansari that were dismissed); and *Elansari v. Ramirez*, E.D. Pa. Civ. A. No. 19-6198, *aff'd* 3d Cir. No. 20-1079 (Aug. 19, 2020) (expressing concern that Plaintiff's "vexatious litigation tactics only burden the limited resources of public servants as [Plaintiff] has yet to state a claim before [the Eastern District of Pennsylvania] which is not dismissed as frivolous.") (emphasis added).

to deter excessive new case filings). That injunction provided that it "may be expanded as necessary if [Plaintiff] submits filings not covered by this injunction that are meritless." *Id*. at 4.

"The All Writs Act, 28 U.S.C. § 1651(a), provides a district court with the ability enjoin 'abusive, groundless, and vexatious litigation.'" *Elansari v. Pennsylvania*, No. 21-CV-0141, 2021 WL 288792, at *6 (E.D. Pa. Jan. 28, 2021) (quoting *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993)). Courts often will impose injunctions that prohibit the *pro se* litigant from filing further cases against the same defendants or using similar allegations. *See Mina v. Chester Cty.*, 803 F. App'x 569, 571 (3d Cir. 2020) (affirming injunction); *Chipps v. U.S.D.C. for the M.D. of Pa.*, 882 F.2d 72, 73 (3d Cir. 1989) (noting that "a district court has authority to require court permission for all subsequent filings once a pattern of vexatious litigation transcends a particular dispute").

District courts are encouraged not to enjoin a litigant unless "exigent circumstances" exist, such as "a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions." *Brow*, 994 F.2d at 1038. Courts have found such exigent circumstances in two situations: (1) where a litigant files numerous motions in the same case or multiple meritless cases, *see, e.g., Campbell v. Postmaster Gen. of United States,* 845 F. App'x 110 (3d Cir. 2021) (affirming filing injunctions tailored to specific cases where litigants filed numerous post-judgement motions in a case that had been decided more than twenty years earlier); *Kent v. Philadelphia Dep't of Hum. Servs.*, 813 F. App'x 736, 738 (3d Cir. 2020) (affirming filing injunction that enjoined *pro se* litigant from filing further cases based on the same time-barred claims after litigant did so several times); and (2) litigants who file numerous, meritless cases against unrelated parties, *see In re Oliver,* 682 F.2d 443, 445 (3d Cir. 1982) (noting that an injunction may be appropriate where litigant filed fifty-one cases, none of which succeeded). Plaintiff fits under both categories. *See Elansari v. Pennsylvania*, 2021 WL 288792 at *6 (describing Mr. Elansari's repeated attempts to

14

sue the Commonwealth of Pennsylvania based on the same criminal convictions, but also noting Mr. Elansari has filed frivolous litigations on a variety of subject matters, against a variety of defendants, and asserting a variety of claims).

To the extent this Court intends to revisit or modify its injunction against Plaintiff, Meta respectfully requests that this Court consider Plaintiff's improper use of emergency motions in this case.

## VI. **CONCLUSION**

For the reasons set forth above, Defendant Meta respectfully requests that this Court dismiss this action and all claims against it with prejudice and that Meta be awarded any further relief this Court deems appropriate.

Dated: February 21, 2022

By: /s/ Stephen P. Hall
Michael A. Green
Joshua D. Groff
215 South Broad Street, Suite 500
Philadelphia, PA 19107
Telephone: (215) 972-5520
Email: mgreen@gsglawfirm.com
Email: jgroff@gsglawfirm.com

Stephen P. Hall (pro hac vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley Street, Suite 2000
Boston, MA 02116
Telephone: (617) 880-1800
Email: stephen.hall@orrick.com

*ATTORNEY FOR DEFENDANT META PLATFORMS, INC.*

## CERTIFICATE OF SERVICE

     I, Stephen P. Hall, certify that I caused a true and correct copy of the foregoing Defendant's Motion to Dismiss to be served via regular mail upon the following:

Amro Elansari
130 Justin Drive
West Chester, PA 19382

                          /s/ Stephen P. Hall
                          Stephen P. Hall

Dated: February 21, 2022