IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMRO ELANSARI,

               Plaintiff,

    v.

META, INC. D/B/A FACEBOOK,

               Defendant.

CIVIL ACTION
NO. 21-5325

## OPINION

**Slomsky, J.**                                                    **September 30, 2022**

## I.    INTRODUCTION

On November, 30, 2021, Plaintiff Amro Elansari initiated this case against Defendant

Meta, Inc. d/b/a Facebook alleging that Meta "discriminated against him [the] week of November 22,

2021 as a Muslim by banning Palestinian Muslim News Organizations reporting on war crimes and

international law violations while allowing Pro-Israel and Jewish Organizations [to] operate on the

Facebook freely posting posts inciting violence and war crimes and international law violations against

Palestinian and Arab people." (Doc. No. 1 ¶ 2.) In his Complaint, Plaintiff alleges that Meta, Inc.

committed: (1) unlawful discrimination on the basis of religion, in violation of Title II of the Civil

Rights Act of 1964 ("Title II"), 42 U.S.C. § 2000a, et seq. (Count I); (2) racial discrimination in

contractual relationships, in violation of 42 U.S.C. § 1981 ("Section 1981") (Count III); (3) negligent

misrepresentation under Pennsylvania state law (Count IV); and (4) fraudulent misrepresentation under

Pennsylvania state law (Count V).[1]  (See Doc. No. 1 at 4–10.)  After he filed his Complaint, a number of Motions were filed by Plaintiff.[2]

On February 21, 2022, Defendant timely filed a Motion to Dismiss Plaintiff's Complaint. (Doc. No. 23.)  On March 1, 2022, Plaintiff filed a Response in Opposition (Doc. No. 24) and on March 11, 2022 a Memorandum in Opposition (Doc. No. 27).  Defendant's Motion to Dismiss is now ripe for disposition.  For reasons that follow, Defendant's Motion to Dismiss will be granted in its entirety.

## II.  FACTUAL BACKGROUND

Viewing the facts alleged in the Complaint as true, Plaintiff has alleged the following facts in this case.  Plaintiff is a practicing Muslim that obtains his news about Palestine and Israel from "various news organizations including but not limited to, primarily, Al Qastal News which provides direct and on-the-ground updates on the Palestine / Israel conflict on a daily basis."  (Doc.

---

[1] Count II is "Relief in Equity."  This is not an independent cause of action.  See infra, Section IV(A)(4).

[2] On the same day that Plaintiff filed his Complaint, he also filed an Ex Parte Petition for Preliminary Injunctive Relief based on the conduct alleged in the Complaint.  (Doc. No. 2.)  On December 15, 2021, he filed an Emergency Ex Parte Petition for Preliminary Injunctive Relief (Doc. No. 6), seeking the same relief requested in his prior Petition, and an Ex Parte Motion for Oral Argument (Doc. No. 5), both of which the Court denied (Doc. No. 8).

On December 23, 2021, Plaintiff filed an Emergency Petition for Reconsideration of his Petition for Preliminary Injunctive Relief (Doc. No. 9), and on February 1, 2022, he filed a Motion to Expedite the Emergency Petition for Reconsideration (Doc. No. 15).  On February 16, 2022, Defendant filed an Opposition (Doc. No. 21), and Plaintiff Replied on the same day (Doc. No. 22).  On March 4, 2022, the Court denied Plaintiff's request for Emergency Reconsideration. (Doc. No. 26.)

On January 19, 2022, Plaintiff filed a request for Entry of Default against Defendant (Doc. No. 11), and on January 26, 2022, a Motion for a Default Judgment against Defendant (Doc. No. 13).  On January 28, 2022, Defendant Responded in Opposition to the Motion for Default (Doc. No. 14), and on February 3, 2022, the Court denied Plaintiff's Motion (Doc. No. 16).

No. 1 ¶ 9.)  Defendant Meta Platforms, Inc., doing business as Meta and formerly known as Facebook, Inc., maintains servers in California that host a social networking site where users may view content, including news.  (Id. ¶¶ 9, 24.)  Plaintiff apparently joined Facebook and asserts that Defendant publishes Terms of Service, which include representations that Defendant operates "a platform of equality and fairness" and "[does] not tolerate discrimination."  (Id. ¶¶ 40, 54.)

Plaintiff alleges that during the week of November 22, 2021, Defendant Meta, Inc. "shut down many prominent Palestine pages in an attempt to silence the Muslim perspective and narrative of the war crimes and violations of international law taking place by the illegal occupation of Israel." (Id. ¶ 10.)  At the same time, Defendant was "not-blocking and not silencing Pro-Israel and Pro-Jewish organizations advocating violence against Arabs and Muslims."  (Id.) Plaintiff alleges that Jewish users can access news pertaining to Israel, while Muslim users "have their news sources banned."  (Id. ¶ 13.)  Plaintiff further avers that Defendant has a dialogue with the government of Israel and has coordinated requests to silence Palestinian Muslim pages.  (Id. ¶¶ 11, 48, 58.)  Defendant submits that these allegations do not support the claims asserted against it.  For this reason and others, it seeks dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6).

## III.    STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678).

Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Iqbal, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Iqbal, 556 U.S. at 678).

"Under the plausibility pleading standard, this Circuit uses a three-step process to evaluate a motion to dismiss a complaint for failure to state a claim for relief."  Lutz v. Portfolio Recovery Assocs., LLC, No. 21-1656, 2022 WL 4295631, at *3 (3d Cir. Sept. 19, 2022) (further citations omitted):

> The first step in that process requires an articulation of the elements of the claim. The second step involves reviewing the complaint and disregarding any "'formulaic recitation of the elements of a ... claim' or other legal conclusion," as well as allegations that are "so threadbare or speculative that they fail to cross the line between the conclusory and the factual."  The third step evaluates the plausibility of the remaining allegations. That involves assuming their veracity, construing them in the light most favorable to the plaintiff, and drawing all reasonable inferences in the plaintiff's favor.

Id. at *3 (internal citations omitted).  The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Iqbal,

4

556 U.S. at 679 (alteration in original) (citation omitted).  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

Because Plaintiff filed his Complaint *pro se*, the Court will liberally construe the pleadings. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003).  The Court "will apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name."  Id. (citing Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002)).

## IV.   ANALYSIS

Defendant moves to dismiss the Complaint on the grounds that Plaintiff fails to state any claim upon which relief may be granted and that the Communication Decency Act, 47 U.S.C. § 230 ("Section 230"), bars Plaintiff's claims.  (Doc. No. 23-1.)  The Court will address each averment in turn and will grant Defendant's Motion to Dismiss.

### A.  Plaintiff Fails to State a Claim Upon Which Relief May be Granted

#### 1.   Plaintiff Fails to State a Claim under Title II (Count I)

Plaintiff's Title II claim also will be dismissed because Plaintiff fails to allege Defendant deprived him of full and equal enjoyment of a public accommodation.  Title II of the Civil Rights Act provides:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

42 U.S.C. § 2000a(a).  To state a Title II claim, a plaintiff must allege that he himself was denied access to or services of a public accommodation.  See McCrea v. Saks, Inc., No. 00-CV-1936, 2000 WL 1912726, at *2 (E.D. Pa. Dec. 22, 2000).  Plaintiff urges the Court to find that Facebook qualifies as a "public accommodation" for purposes of Title II.  (See Doc. No. 1 at 4–7.)  But Title

II identifies a detailed list of public accommodations within the meaning of the statute.  See 42 U.S.C. § 2000a(b).  Businesses not listed in Title II should not be read into the statute. See McCrea, 2000 WL 1912726, at *2.  And under established Third Circuit law, a "public accommodation" is limited to physical structures.  See Peoples v. Discover Fin. Servs.,Inc., 387 F. App'x 179, 183 (3d Cir. 2010) (holding that the term "public accommodation" is limited to physical accommodations); see also Mahoney v. Herr Foods Inc., 19-CV-5759, 2020 WL 1979153, at *3 (E.D. Pa. Apr. 24, 2020).  Further, "a number of courts have concluded that companies which provide online services exclusively do not fall under the ambit of Title II's prohibition against discrimination in places of 'public accommodation' as that definition is limited to businesses which operate out of physical facilities."  Wilson v. Twitter, 3:20-CV-00054, 2020 WL 3410349, at *7 (S.D.W. Va. May 1, 2020), report and recommendation adopted, 2020 WL 3256820 (S.D.W. Va. June 16, 2020).

Here, Plaintiff fails to allege he was denied either access to or services of a public accommodation.  First, Facebook is not a public accommodation under Title II.  It is not identified in the list of public accommodations within the meaning of that statute.  See 42 U.S.C. § 2000a(b). Second, Facebook is not a physical facility; it is a website.  Plaintiff does not access any physical space when he uses Facebook.  Lastly, Plaintiff was not denied access to or services of Facebook. He merely alleges that some Palestine/Muslim news pages were removed while some Israel/Jewish news pages were not.  He does not allege that his access to Facebook is different than any other user.  Moreover, Meta is a private company and a user of Facebook cannot dictate what will be published on its website.  For all these reasons, Plaintiff has not alleged he is entitled to relief under Title II and this claim will be dismissed.

### 2.   Plaintiff Fails to State a Claim under § 1981 (Count III)

Plaintiff's claim under 42 U.S.C. § 1981 (Section 1981) also will be dismissed.  Section

1981 provides:

> All persons within the jurisdiction of the United States shall have the same right
> in every State and Territory to make and enforce contracts, to sue, be parties, give
> evidence, and to the full and equal benefit of all laws and proceedings for the
> security of persons and property as is enjoyed by white citizens, and shall be
> subject to like punishment, pains, penalties, taxes, licenses, and exactions of every
> kind, and to no other.

42 U.S.C. § 1981.  To state a claim under Section 1981, a plaintiff must allege: "(1) [that plaintiff]

is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant;

and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which

includes the right to make and enforce contracts . . . ."  Brown v. Philip Morris Inc., 250 F.3d 789,

797 (3d Cir. 2001) (quoting Yelverton v. Lehman, No. Civ. A. 94–6114, 1996 WL 296551, at *7

(E.D.Pa. June 3, 1996), aff'd. mem., 175 F.3d 1012 (3d Cir.1999)).  "Section 1981 offers relief

when racial discrimination blocks the creation of a contractual relationship, as well as when racial

discrimination impairs an existing contractual relationship, so long as the plaintiff has or would

have rights under the existing or proposed contractual relationship."  Domino's Pizza, Inc. v.

McDonald, 546 U.S. 470, 476 (2006).

Here, Plaintiff has not alleged sufficient facts to show that Defendant violated Section

1981.  First, Plaintiff fails to allege Defendant intended to discriminate against him based on race.

He alleges that Defendant "shut down many prominent Palestine pages in an attempt to silence the

Muslim perspective and narrative of the war crimes and violations of international law taking place

by the illegal occupation of Israel," while "not-blocking and not silencing Pro-Israel and Pro-

Jewish organizations advocating violence against Arabs and Muslims."  (Doc No. 1 ¶ 10.)  But in

this averment Plaintiff is not alleging that his access to Facebook was different from any other

user.  In this regard, while he may not like the content published, Facebook's decision as a private company on what to publish on its website is not specifically targeted at Plaintiff.  In short, these allegations do not show that Defendant engaged in a discriminatory refusal to allow Plaintiff to use Facebook based on race.

Second, Plaintiff fails to allege Defendant engaged in any discrimination concerning his right to make or enforce a contract.  Plaintiff appears to allege the contract at issue here is Defendant's "Terms of Use," which he asserts contain representations that "users would be treated equally and that the company would maintain effort to ensure users are treated equally and fairly based on race / religion / other protected classes."  (Doc. No. 1 ¶ 49.)  But even viewing the Terms of Use as a contract, Plaintiff does not allege that his right to make or enforce it has been impaired at all, let alone because of his race.  Thus, Defendant has not deprived Plaintiff of the right to contract for, purchase, or use Facebook.  And once again, Plaintiff does not allege that Defendant treated him or his access to Facebook differently than any other user.  Therefore, Plaintiff's Section 1981 claim will be dismissed.

### 3.   Plaintiff Fails to State a Claim for Negligent Misrepresentation or Fraudulent Misrepresentation under Pennsylvania Law (Counts IV and V)

Plaintiff's state law claims for negligent misrepresentation and fraudulent misrepresentation also will be dismissed.  Under Pennsylvania Law, negligent misrepresentation requires a Plaintiff to allege:

> (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation.

Bortz v. Noon, 729 A.2d 555, 561 (Pa. 1999) (citing Gibbs v. Ernst, 647 A.2d 882, 890 (Pa. 1994)).

The elements of fraudulent misrepresentation are nearly identical.  Fraudulent misrepresentation

differs only in that the misrepresentation must be made with knowledge of its falsity or recklessness as to whether it is true or false.[3]  See Gibbs, 647 A.2d at 889-90.  To allege a misrepresentation of material fact, a plaintiff must plead with particularity and identify specific misrepresentations.  See Foge, McKeever LLC v. Zoetis Inc., 565 F. Supp. 3d 647, 657 (W.D. Pa. 2021); Hanover Ins. Co. v. Ryan, 619 F. Supp. 2d 127, 142 (E.D. Pa. 2007).

Here, Plaintiff fails to allege any specific misrepresentation made by Defendant.  In his Complaint, Plaintiff states that "Defendant represents in their terms of service and various public statements that they are a platform of equality and fairness as well as they do not tolerate discrimination in order to entice usership – for profit – while then engaging in overt acts of unequal treatment in violation of the same" and that "they are a platform of equality on the basis of race." (See Doc. No. 1 ¶¶ 54, 58).  Plaintiff's allegations fail to identify any specific misrepresentations of material fact made by Defendant and instead point generally to their terms of service.  The terms of service are not violated simply by the removal of content on Facebook.  Such actions do not amount to a misrepresentation.  Because Plaintiff fails to allege any material misrepresentations, the Court need not consider the remaining elements of negligent and fraudulent misrepresentation.  Accordingly, the Court will dismiss both claims.

---

[3] "Fraudulent (or intentional) misrepresentation requires the plaintiff to prove six elements: (1) a representation; (2) that is material to the transaction at issue; (3) made falsely, with knowledge of its falsity or reckless disregard as to whether it is true or false; (4) with the intent to mislead another person into relying on it; (5) justifiable reliance; and (6) an injury proximately caused by the reliance."  Gregg v. Ameriprise Fin., Inc., 245 A.3d 637, 645–46 (Pa. 2021) (citing Bortz v. Noon, 729 A.2d 555, 560 (Pa. 1999)).

### 4.   Relief in Equity is Not a Cause of Action (Count II)

Finally, Plaintiff's claim for Relief in Equity will be dismissed because "injunctive relief is a remedy, not an independent cause of action." Sikhs for Just. "SFJ", Inc. v. Facebook, Inc., 144 F. Supp. 3d 1088, 1090 (N.D. Cal. 2015), aff'd sub nom. Sikhs for Just., Inc. v. Facebook, Inc., 697 F. App'x 526 (9th Cir. 2017); see also Salvitti v. Lascelles, 578 F. Supp. 3d 712, 723 (E.D. Pa. 2022).  Because Plaintiff's Complaint fails to allege any cognizable claim for relief in equity, this claim will be dismissed.

### B.  The Communication Decency Act Bars Plaintiff's Claims

Finally, Plaintiff's claims in their entirety will be dismissed for another reason; they are barred under the Communications Decency Act, 47 U.S.C. § 230 ("Section 230").  In its Motion to Dismiss, Defendant submits that "[s]ection 230 protects computer service providers from claims seeking to hold the service provider liable for exercising a publisher's traditional editorial functions, such as deciding whether to publish, withdraw, postpone, or alter content."  (Doc. No. 23-1 at 11.)   Section 230 provides in pertinent part: "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  "The provision 'precludes courts from entertaining claims that would place a computer service provider in a publisher's role,' and therefore bars 'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone, or alter content.'"  Green v. Am. Online (AOL), 318 F.3d 465, 471 (3d Cir. 2003) (further citations omitted); see also Hepp v. Facebook, 14 F.4th 204, 209 (3d Cir. 2021) (internal citations omitted).

"Section 230 immunizes from liability (1) an interactive computer service provider (2) whom a plaintiff seeks to treat as a publisher or speaker of information (3) provided by another

information content provider." <u>Putt v. TripAdvisor Inc.</u>, No. CV 20-3836, 2021 WL 242470, at *4 (E.D. Pa. Jan. 25, 2021).

Here, Defendant is immune from Plaintiff's claims under Section 230.  First, regarding the first element, Defendant Meta is an interactive computer service provider.  Courts in the Third and other Circuits have held that websites and social media are considered interactive computer service providers under Section 230.[4]  <u>See</u> <u>Green</u>, 318 F.3d at 470; <u>see also</u> <u>Sikhs for Just. "SFJ", Inc. v. Facebook, Inc.</u>, 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015), <u>aff'd sub nom.</u> <u>Sikhs for Just., Inc. v. Facebook, Inc.</u>, 697 F. App'x 526 (9th Cir. 2017); <u>Shulman v. Facebook.com</u>, No. 17-764, 2018 WL 3344236, *7 (D.N.J. July 9, 2018)); <u>Marfione v. KAI U.S.A., Ltd.</u>, No. 17-10, 2018 WL 1519042, at *6 (W.D. Pa. Mar. 28, 2018).  Facebook is an interactive computer service because, in accord with Plaintiff's own allegations, it enables access by multiple users to a computer server. (<u>See</u> Doc. No. 1 ¶ 24.)

Regarding the second element, Plaintiff treats Defendant as a publisher or speaker of information because he seeks to hold Defendant liable for "a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone, or alter content." <u>Green</u>, 318 F.3d at 471 (3d Cir. 2003) (citing <u>Zeran v. America Online, Inc.</u>, 129 F.3d 327, 330 (4th Cir.1997)). Here, Plaintiff alleges Defendant removed Palestinian Muslim news sources from its platform.

---

[4] Section 230(f)(2) provides the definition of an interactive computer service:

> The term "interactive computer service" means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions.

47 U.S.C. § 230(f)(2).

(Doc. No. 1 ¶ 10.)  Withdrawing content falls squarely in "a publisher's traditional editorial functions."  Plaintiff is treating Defendant as a publisher of information.

Finally, with respect to the third element, the content at issue is provided by a third-party information content provider and not by Defendant itself.[5]  In the Complaint, Plaintiff alleges that Defendant removed news published by Palestinian and Muslim news sources.  Defendant itself had no role in creating or developing the information provided through these new sources. Therefore, the content at issue was provided by "another information content provider."  47 U.S.C. § 230(c)(1).  Because all three elements set forth in Section 230 to confer immunity are met, Plaintiffs claims are barred and will be dismissed for this additional reason.[6]

### C.  The Court Will Not Modify Its Injunction Against Plaintiff at This Time

The Court has enjoined Plaintiff, pursuant to the All Writs Act, 28 U.S.C. § 1651(a), from filing any new civil, non-habeas cases on an in forma pauperis basis, unless certain conditions are met.  Elansari v. Commonwealth of Pennsylvania, Civil Action No. 21-CV-0141, Doc. No. 11, at 3 (E.D. Pa. Jan. 29, 2021).  Plaintiff is already on notice that "this injunction may be expanded as necessary if he submits filings not covered by this injunction that are meritless."  (Id. at 4 ¶ 5.) Accordingly, the Court will not revisit or modify its injunction at this time.

### V.  CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (Doc. No. 23-1) will be granted.  An appropriate Order will follow.

---

[5] Section 230(f)(3) defines information content provider: "The term 'information content provider' means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."  47 U.S.C. § 230(f)(3).

[6] Defendants also raise the issue of whether Plaintiff has standing to bring his claims in this case. Because the Court will dismiss Plaintiff's claims on the two other grounds, supra, it need not reach the issue of standing.